UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

R.W. a minor, by ELIZABETH WILSON,

                 Plaintiff,             1:14-CV-0642
                                          (GTS)
v.

COMM'R OF SOC. SEC.,

                 Defendant.
_____

APPEARANCES:                         OF COUNSEL:

IRWIN M. PORTNOY                  IRWIN M. PORTNOY, ESQ.
  Counsel for Plaintiff
IRWIN M. PORTNOY & ASSOCIATES, P.C.
542 Union Ave.
New Windsor, NY 12550

U.S. SOCIAL SECURITY ADMIN.       DANIEL R. JANES, ESQ.
OFFICE OF REG'L GEN. COUNSEL-REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

      Currently before the Court, in this Social Security action filed by Elizabeth Wilson

on behalf of her minor son, R.W. ("Plaintiff") against the Commissioner of Social

Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g), are the

parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 11, 14, 17.) For the

reasons set forth below, Plaintiff's motion is granted in part and denied in part, and

Defendant's motion is granted in part and denied in part.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

R.W. was born on November 12, 2004. (T. 137.) At the time of his hearing, he was a school-age child. (T. 22.) R.W.'s alleged disability consists of a learning disability, attention deficit hyperactivity disorder ("ADHD"), dyslexia, and asthma. (T.182.)

### B.    Procedural History

On May 25, 2011, Plaintiff applied for Supplemental Security Income on R.W.'s behalf. (T. 55.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On November 26, 2012, Plaintiff appeared before the ALJ, Dennis Katz. (T. 36-54.) On January 4, 2013, ALJ Katz issued a written decision finding R.W. not disabled under the Social Security Act. (T. 16-35.) On April 10, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-5.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law. First, the ALJ found that R.W. was a "school-age child" at the time of filing and a "school-age child" at the time of the hearing pursuant to 20 C.F.R. § 416.926a(g)(2). (T. 22.) Second, the ALJ found that R.W. had not engaged in substantial gainful activity since the application date. (*Id.*) Third, the ALJ found that R.W. suffered from the severe impairments of a learning disability, ADHD, and dyslexia. (*Id.*) Fourth, the ALJ found R.W. did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404,

Subpart P, Appendix I ("the Listings"). (*Id.*) Fifth, the ALJ found R.W. did not have an impairment or combination of impairments that functionally equaled an impairment set forth in the Listings. (T. 22-31.) Sixth, and finally, the ALJ concluded R.W. had not been disabled, as defined by the Social Security Act, since May 25, 2011, the date his application was filed. (T. 31.)

## II.    THE PARTIES' BRIEFINGS

### A.    Plaintiff's Arguments

Generally, in support of her motion for judgment on the pleadings, Plaintiff makes nine arguments. First, Plaintiff argues the ALJ conducted a perfunctory hearing. (Dkt. No. 11 at 14-15 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ failed to explain his finding that R.W. did not meet a Listing. (*Id.* at 15-16.) Third, Plaintiff argues the ALJ failed to acknowledge relevant and probative evidence. (*Id.* at 16-17.) Fourth, Plaintiff argues the ALJ erred in evaluating the domain of acquiring and using information. (*Id.* at 17-21.) Fifth, Plaintiff argues the ALJ erred in evaluating the domain of attending and completing tasks. (*Id.* at 21-22.) Sixth, Plaintiff argues the ALJ erred in evaluating the domain of interacting with others. (*Id.* at 22-23.) Seventh, Plaintiff argues the ALJ erred in evaluating the domain of caring for oneself. (*Id.* at 24-25.) Eighth, Plaintiff argues the ALJ erred in assessing the domain of moving and manipulating objects. (*Id.* at 25.) Ninth, and lastly, Plaintiff argues the ALJ erred in assessing the domain of health and physical well-being. (*Id.*)

### B.    Defendant's Argument

Generally, in support of her cross-motion for judgment on the pleadings, Defendant makes four arguments. First, Defendant argues substantial evidence

supports the ALJ's finding that R.W. did not meet or equal any listed impairment. (Dkt. No. 14 at 4-5 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ properly considered all medical and non-medical opinions. (*Id.* at 5-10.) Third, Defendant argues the ALJ properly evaluated the six functional equivalence domains. (*Id.* at 10-16.) Fourth, and lastly, Defendant argues the ALJ conducted a proper hearing. (*Id.* at 16-17.)

### C.   PLAINTIFF'S RESPONSE

Plaintiff filed a response brief in which she raised two arguments. First, Plaintiff reiterated the argument made in her initial brief, that the ALJ failed to determined R.W. met a Listing; however, Plaintiff adds to her argument that R.W. meets Listing § 112.11 Attention Deficit Hyperactivity Disorder. (Dkt. No. 17 at 1-3 [Pl.'s Reply Mem. of Law].). Second, and lastly, Plaintiff argues the case should be remanded and re-heard by a different ALJ. (*Id.* at 3-5.)

## III.   RELEVANT LEGAL STANDARD

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct

legal principles."); *see Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

An individual under the age of eighteen (18) is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result

in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity...." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. *See* 20 C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, No. 02-CV-3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924(b); *Kittles*, 245 F. Supp. 2d at 488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. *See* 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the claimant has not engaged in substantial gainful activity, the second step of the test next requires examination of whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. *See* 20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. In essence, "a child is [disabled under the Social Security Act] if his impairment is as severe as one that would prevent an adult from working." *Zebley v. Sullivan*, 493 U.S. 521, 529, 110 S. Ct. 885, 890 (1990).

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether it meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). *Id.* Equivalence to a listing can be either medical or functional. *See* 20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. *See* 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

Analysis of functionality is informed by consideration of how a claimant functions in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include: (i) [a]cquiring and using information; (ii) [a]ttending and completing tasks; (iii) [i]nteracting and relating with others; (iv) [m]oving about and manipulating objects; (v) [c]aring for [oneself]; and (vi) [h]ealth and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

## IV.    ANALYSIS

### A.    Whether the ALJ Conducted a Proper Hearing.

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons set forth in Defendant's memorandum of law. (Dkt. No. 14 at 16-17 [Def.'s Mem. of Law].) The Court adds the following analysis.

Plaintiff argues the ALJ's hearing was not properly conducted, because the hearing lasted approximately seventeen minutes, the ALJ failed to understand R.W.'s reading ability, and the ALJ failed to resolve discrepancies between testing results and R.W.'s behavior and activities pursuant to 20 C.F.R. 404 Appx. 1, § 112.00. (Dkt. No. 11 at 14-15 [Pl.'s Mem. of Law].) Defendant counters that the ALJ presented a full and adequate hearing and further, Plaintiff and R.W. were represented by counsel who questioned Plaintiff during the hearing and indicated that no further testimony was required. (Dkt. No. 14 at 16-17 [Def.'s Mem. of Law].)

The ALJ conducted a proper hearing. At the onset of the hearing, the ALJ inquired into, and accepted, additional evidence, thus ensuring the record was complete. (T. 38-39.) Plaintiff's counsel indicated that the record was complete except for an updated progress report which was subsequently filed. (T. 38-39.) The ALJ then elicited testimony from Plaintiff regarding R.W.'s schooling, his medication, his daily activities, and his interaction with siblings. (T. 41-47.) The ALJ then examined R.W. (T. 51-54.) Plaintiff's attorney also examined Plaintiff regarding R.W.'s abilities. (T. 48-50.) Plaintiff's attorney declined to question R.W. (T. 53.)

The ALJ conducted a proper hearing, where he acquired additional evidence ensuring the record was complete, he questioned Plaintiff and R.W., and provided ample opportunity for Plaintiff's counsel to also elicit testimony. See 20 C.F.R. § 416.1444.

**B.      Whether the ALJ Properly Evaluated the Six Functional Equivalence Domains.**

Plaintiff argues the ALJ improperly evaluated each of the six functional domains, asserting that R.W. had either marked or extreme limitations in each domain. (Dkt. No. 11 at 17-25 [Pl.'s Mem. of Law].)

In making his overall determination, the ALJ afforded significant weight to R.W.'s 2012 Individual Education Program ("IEP") report and a November 2012 Progress Report, which he reasoned showed "improvement and response to medication." (T. 26.) He afforded "less weight" to the contemporaneous teacher assessment competed by Ms. Stacy Seefeldt-Burger. (*Id.*)

In 2012 R.W. was classified at learning disable and moved from a general education class to a full time special education class with Boards of Cooperative

Educational Services ("BOCES") for 3rd grade. (T. 372.) The IEP stated that R.W. could not participate in general education class, because he required special instruction in an environment with a small student to teacher ratio and minimal distraction in order to progress. (*Id.*) The class room student to teacher ratio at BOCES was 8:1+1. (T. 364.) Based on reviews of testing the IEP noted R.W.'s educational skills were at a 1st grade level at the time he was entering 3rd grade. (*Id.*) Testing indicated R.W.'s cognitive skills were average, except for a weakness with working memory. (*Id.*) The IEP further stated that R.W. got along well with peers and was socially appropriate. (*Id.*)

Overall, the IEP indicated R.W. had "significant" delays in reading comprehension, math concepts, speech skills, motor skills, and attention skills, which affected his progress in the general education curriculum. (T. 368.) Specifically, R.W.'s ability to recognize all letter names and sounds, and blending sounds to read, was an area of weakness. (T. 367.) The IEP noted improvement in R.W.'s ability to maintain focus during small group lessons and that his behavior improved when on medication. (*Id.*)

The IEP set out specific annual goals in the areas of study skills, reading, writing, mathematics, speech/language, and social/emotional/behavioral. (T. 369-370.) In study skills, R.W.'s goal was to be able to refocus without needing to be prompted and to be able to attend to a single activity. (T. 369.) In reading, R.W.'s goal was to be able to increase his reading skills to a 2nd grade level. (*Id.*) In writing, R.W.'s goals were to be able to complete a sentence with proper punctuation and compose a seven sentence paragraph. (*Id.*) In mathematics, R.W.'s goals were to be able to add and subtract without regrouping, identify numbers from 1-100, and solve one-step word problems.

(*Id.*) In speech/language, R.W.'s goals were to be able to produce three target sounds in isolation, and display appropriate communicative attending behaviors. (*Id.*) In social/emotional/behavior, R.W.'s goals were to be able to verbally identify feelings of frustration, and communicate and interact in a socially acceptable manner with peers and adults. (T. 370.)

A progress report, which the ALJ also afforded "significant weight," was completed in November of 2012. (T. 26.) In the area of study skills, R.W. was "progressing gradually", which was further defined as "making less than anticipated progress." (T. 385.) In the area of reading, decoding, and comprehension, it was noted that R.W. was also "progressing gradually[,] [he was] making less than anticipated progress" and specifically, that R.W. was reading only one syllable words. (T. 386.) In writing, R.W. was "progressing inconsistently." (T. 387.) Specifically, R.W. was writing words, but not formulating complete sentences. (*Id.*) In mathematics, R.W. was making "less than anticipated progress" in addition and subtraction without regrouping. (*Id.*) However, R.W. was making satisfactory progress in identifying numbers from 1 to 100, and "progressing gradually" in solving one-step word problems with assistance. (*Id.*) In speech/language, R.W. was "progressing satisfactorily" in the areas of producing target sounds and maintaining syllables. (T. 389.) However, R.W. was making "less than anticipated progress" in using appropriate communicative behaviors. (*Id.*) In the social/emotion/behavioral section, R.W. was "progressing gradually, [he was] making less than anticipated progress," in verbally identifying feelings of frustration, communicating, and interacting appropriately with peers and adults. (T. 390.)

The progress report also contained grades for each subject area. R.W. received an 85 in Art, a 70 in English Language Arts ("ELA"), an 85 in math, a 90 in music, a 90 in physical education, an 80 in science, and an 84 in social studies. (T. 391.)

At the time of the progress report, R.W.'s teacher, Ms. Burger, completed a teacher questionnaire. (T. 326-334.) The ALJ afforded the questionnaire, "less weight," reasoning that it was inconsistent with the IEP and November 2012 progress report. (T. 26.) Overall, Ms. Burger observed R.W. was reading at a K.8 level, performing math at a 1.6 grade level, and his written language was at a 1.4 grade level. (T. 327.) She opined R.W. had a "very serious problem" or "a serious problem" in five out of ten activities in the domain of acquiring and using information. (T. 328.) She specifically noted he received one on one instruction when possible. (*Id.*) In the area of attending and completing tasks, Ms. Burger observed R.W. had a "serious problem" or "obvious problem" in six out of the thirteen key activities listed. (T. 329.) Ms. Burger noted "a very serious problem" or "serious problem" in four out of thirteen activities in the domain of interacting and relating to others. (T. 330.) She noted no problems in the area of moving about and manipulating objects. (T. 331.) Ms. Burger observed "a very serious problem" or a "serious problem" in six out of ten activities in the domain of caring for oneself. (T. 332.)

Where "the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir. 1983); *see also Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir. 2003); *Berry*

*v. Schweiker,* 675 F.2d 464, 469 (2d Cir. 1982). Similarly, where "application of the correct legal standard could lead to only one conclusion, we need not remand." *Schaal v. Apfel,* 134 F.3d 496, 504 (2d Cir. 1997).

After careful review, this Court concludes that in the domains of 1) acquiring and using information, 2) attending and completing tasks, and 3) caring for oneself, that the ALJ's reasoning cannot be "gleaned" from the record for the reasons stated below. However, this Court concludes that the ALJ's determination regarding the domains of 1) interacting and relating to others, 2) moving and manipulating objects, and 3) health and physical well being was supported by substantial evidence.

### 1. Whether the ALJ Properly Evaluated the Domain of Acquiring and Using Information.

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons set forth in Plaintiff's memorandum of law. (Dkt. No. 11 at 17-21 [Pl.'s Mem. of Law].) The Court adds the following analysis.

In evaluating the level of impairment in "acquiring and using information," consideration must be given to how well the child acquires or learns information, and how well the child uses the information he has learned. 20 C.F.R. § 416.926a(g). A school-age child (between six and twelve years-old) "should be able to learn to read, write, and do math, and discuss history and science." 20 C.F.R. § 416.926a(g)(2)(iv). A child of that age will need to use these skills in academic situations to demonstrate what he has learned (e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions). *Id.* A school-age child should also "be able to use increasingly complex language (vocabulary and grammar) to share information and

ideas with individuals or groups, by asking questions and expressing [his] own ideas, and by understanding and responding to the opinions of others." *Id.*

The ALJ determined Plaintiff had a "less than marked limitation" in this domain. (T. 26-27.) In support of his determination, the ALJ reasoned R.W. received a grade of 70 in ELA in November 2012. (*Id. referring to* T. 391.) Plaintiff argues the ALJ failed to take into consideration R.W.'s structured environment and the ALJ rejected contrary evidence. (Dkt. No. 11 at 18, 20 [Pl.'s Mem. of Law].)

An ALJ must consider a plaintiff's structured setting when evaluating his impairments and how the setting impacts functional limitations. *see* 20 C.F.R. 416.924a(b)(5)(iv)(C). "A structured or supportive setting may minimize signs and symptoms of [the child's] impairment(s) and help to improve [the child's] functioning while [he is] in it, but [his] signs, symptoms, and functional limitations may worsen outside this type of setting." *Id.* Therefore, even if the child can function normally while within the confines of the structured or supportive setting, the ALJ must assess whether the child would be able to function adequately absent such assistance. *Id.* Although the ALJ need not make explicit reference to the effects of a structured or supportive setting in order to be deemed to have sufficiently considered them, remand is necessary "when it is evident that the ALJ did not consider [this] factor," *Archer ex rel. J.J.P. v. Astrue*, 910 F. Supp. 2d 411, 426-27 (N.D.N.Y. 2012), *quoting Gonzalez ex rel. C.C. v. Astrue,* No. 07–CV–487, 2009 WL 4724716, at *6 (N.D.N.Y. Dec. 2, 2009).

Here, the ALJ acknowledged R.W.'s structured setting multiple times in his decision. The ALJ referred to R.W. attending BOCES, recognized R.W.'s IEP, and discussed the teacher questionnaire from Ms. Burger (special education teacher). (T.

24, 25.) Therefore, the ALJ took into consideration R.W.'s structured setting in his analysis.

Although the ALJ took R.W.'s structured setting into consideration, this Court finds that the ALJ did not sufficiently weight the evidence in the record. Specifically, in the domain of acquiring and using information, the ALJ concluded R.W. had a less than marked limitation because he "achieved a grade of 70 in ELA" and "he [was] capable of learning, albeit at a slower rate when not appropriately medicated." (T. 27.)

First, the ALJ read R.W.'s ELA grade out of context. The ALJ reasoned the 2012 BOCES IEP report, and subsequent progress report, showed that R.W. was making progress in most domains. (T. 26.) However, when read in context, R.W.'s progress was less than anticipated and still far below his grade level. For example, although R.W. received a grade of 70 in ELA, the report stated R.W. was "progressing gradually – [he was] making less than anticipated progress, but may still achieve the goal[1]. [R.W.] is reading one syllable words at a time." (T. 386.) Further, R.W. was making less than anticipated progress in his goal of increasing his reading comprehension skills from a 1st grade to a 2nd grade level. (*Id.*) R.W.'s writing skills were also well below the 3rd grade level. R.W. could write words, but could not formulate words into complete sentences. (T. 387.) Therefore, even though R.W. received a grade of 70 in ELA, he was still not reading above a 1st grade level and could not write a complete sentence, while in the 3rd grade. Therefore, the ALJ's finding of less than marked limitation in acquiring and using information was not supported by substantial evidence because the ALJ failed to read the evidence in the context of the report itself. *See Keene ex rel. J.T. v. Astrue*, 901

---

[1]        Goal: R.W. will increase his reading decoding skills from the end of the 1st grade level to the end of the 2nd grade level. (T. 386.)

F.Supp.2d 339, 350 (N.D.N.Y. 2012) (remanding where ALJ failed to consider entire record, did not justify his findings with any evidence beyond a testing score, and made no attempt to reconcile contrary evidence).

Further, in affording the IEP report and subsequent progress report "significant weight" the ALJ reasoned that both showed "improvement and response" to medication. (T. 26.) However, in regards to medication, the IEP notes only that behavior and attention difficulties at R.W.'s prior school were "possibly" an issue prior to medication. (T. 364.) The IEP also noted that R.W. took medication for attention issues and that "reportedly" there was a difference when R.W. was not on medication. (T. 367.) The IEP and progress report take note of R.W.'s medication and behavioral concerns; however, taking note of the use and need of medication is not the equivalent of showing improvement and response to medication. The IEP and progress report do not provide a definitive indication, as the ALJ implies, that R.W.'s academic ability improved or responded to medication. Also, the ALJ's reliance on R.W.'s improvement with medication would apply only to his severe impairment of ADHD, thus ignoring R.W.'s other severe impairments of dyslexia and a learning disability.

Therefore, for the reasons stated herein, this matter is remanded for a proper evaluation of the domain of acquiring and using information.

**2.      Whether the ALJ Properly Evaluated the Domain of Attending and Completing Tasks.**

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons set forth in Plaintiff's memorandum of law. (Dkt. No. 11 at 21-22 [Pl.'s Mem. of Law].) The Court adds the following analysis.

The domain of attending and completing tasks principally entails an assessment of the degree to which a child can "focus and maintain ... attention, and ... begin, carry through, and finish ... activities." 20 C.F.R. § 416.926a(h). Examples of limitations in this area include: being easily startled, distracted, or over-reactive to sounds, sights, movements, or touch; being slow to focus on, or fail to complete activities of interest; repeatedly becoming sidetracked from activities or frequently interrupting others; becoming easily frustrated and giving up on tasks, including ones the child is capable of completing; and, requiring extra supervision to keep the child engaged in an activity. See Id. § 416.926a(h)(3)(i)-(v).

The ALJ concluded R.W. had a "less than marked" limitation in this area, because he was making "gradual progress" in study skills. (T. 28 referring to T. 385.) Once again, a complete reading of the evidence upon which the ALJ relied actually stated that although R.W. was "progressing gradually," he was "making less than anticipated progress" in the area of study skills. (T. 385.) The report noted R.W.'s goal was to be able to refocus without needing to be prompted when distracted and to attend to an assigned activity. (Id.) The report further indicated that directions and questions often needed to be repeated due to R.W.'s short attention span. (T. 389.) R.W.'s IEP stated he had significant delays in "attentional skills" which affected his progress in general education. (T. 368.) Therefore, although he was "progressing gradually" in this area, when read in context, this phrase indicated that although progress was being made, R.W. was still unable to refocus without prompts or properly attend to assignments.

Further, the teacher questionnaire completed by Ms. Burger stated R.W. was highly impulsive and often disruptive. (T. 329.) Ms. Burger opined R.W. had "obvious" to "serious" problems in areas of attending and completing tasks. (*Id.*) Dr. Bush also observed that R.W. appeared fidgety or restless during testing, was often distracted, was uncooperative at times, and would not try difficult tasks at all. (T. 342.)

As with the previous domain, the ALJ selectively chose language from R.W.'s progress report and IEP without regard to the context from which it was taken. This matter is remanded for a proper evaluation of R.W.'s impairments in the domain of attending and completing tasks.

### 3.      Whether the ALJ Properly Evaluated the Domain of Caring for Oneself.

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons set forth in Plaintiff's memorandum of law and response memorandum. (Dkt. No. 11 at 24-25 [Pl.'s Mem. of Law].) The Court adds the following analysis.

This domain considers how well a child maintains a healthy emotional and physical state, including how well a child satisfies his physical and emotional wants and needs in appropriate ways. 20 C.F.R. § 416.926a(k). This domain "does not address children's physical abilities to perform self-care tasks like bathing, getting dressed, or cleaning up their room . . . [but] on how well a child relates to self by maintaining a healthy emotional and physical state in ways that are age-appropriate and in comparison to other same-age children who do not have impairments. SSR 09-7p (S.S.A. Feb. 17, 2009).

The ALJ determined R.W. had a "less than marked" limitation in this domain, reasoning R.W. no longer received occupational therapy. (T. 30.) Plaintiff argues R.W. had poor organizational skills, problems handling frustration, and difficulty using coping skills. (Dkt. No. 11 at 24 [Pl.'s Mem. of Law].) Plaintiff further argues the ALJ didn't "assess pertinent evidence in this domain." (*Id.*) Although the ALJ did find some limitations in this area, his reasoning for doing so is not clear. The ALJ's conclusion that R.W. had a "less than marked" limitation because he did not need occupational therapy indicates that the ALJ erroneously focused only on the physical aspect of the domain and ignored the emotional aspect. As SSR 09-7p cautions, this domain does not address how a child's physical ability to care for himself, but how he relates to himself in a physical and emotional manner.

Opinion evidence indicated R.W. had limitations in this domain which the ALJ did not discuss. For example, Ms. Burger opined R.W. had a "very serious problem" in four out of ten factors, a "serious problem" in two out of ten factors, and "no problem" in four out of ten factors in the area of caring for oneself. (T. 332.) Ms. Burger stated R.W. had difficulty asking for help and applying coping skills. (*Id.*)

Remand is necessary to reevaluate this domain, as the ALJ's determination failed to include an analysis of the emotional aspect of the domain and evidence in the record indicates R.W. had emotional difficulties in caring for himself. Further, this Court cannot ascertain from a reading of the ALJ's decision what, if any, evidence he relied on in evaluating the emotional aspect of this domain.

**4.    Whether the ALJ Properly Evaluated the Domain of Interacting and Relating to Others.**

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons set forth in Defendant's memorandum of law. (Dkt. No. 14 at 13-14 [Def.'s Mem. of Law].) The Court adds the following analysis.

The domain of interacting and relating to others considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. 20 C.F.R. § 416.926a(i).

The ALJ conclusion that R.W. has a "less than marked" limitation in interacting and relating to others was supported by substantial evidence. (T. 28-29.) R.W.'s IEP noted that his goals included being able to identify feelings of frustration; communicate and interact in non-aggressive ways; and, communicate and interact in a socially acceptable manner. (T. 370.) On R.W.'s IEP report in the Social/Emotion/Behavioral section, "progressing gradually – the student is making less than anticipated progress but may still achieve the goal" was noted. (T. 390.) There were no additional comments in this section. R.W.'s general education teachers, Ms. Manzi and Ms. Salvato, did not indicate behavioral problems. (T. 283-84 and 34.) Therefore, substantial evidence supports the ALJ's conclusion that R.W. had "less than marked" limitations in this area.

**5.    Whether the ALJ Properly Evaluated the Domain of Moving About and Manipulating Objects.**

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons set forth in Defendant's memorandum of law. (Dkt. No. 14 at 15-16 [Def.'s Mem. of Law].) The Court adds the following analysis.

This domain considers how well a child is able to move his body from one place to another and how a child moves and manipulates things. 20 C.F.R. § 416.926a(j). The ALJ determined R.W. had "no limitation" in this domain. (T. 29.) Plaintiff asserts that R.W. underwent occupational therapy for handwriting and the ALJ erred in failing to assess his need for therapy. (Dkt. No. 11 at 24-25 [Pl.'s Mem. of Law].) However, substantial evidence supports the ALJ's conclusion that R.W. had "no limitations" in this domain. R.W.'s teachers noted that he had no limitations in moving about and manipulating objects. (T. 195, 331.) Besides a prescription for occupational therapy for fine motor delay (T. 265), medical documentation from R.W.'s pediatrician shows no indication of any concerns for his physical ability (*see generally* T. 224-304). Further, R.W.'s IEP noted that occupational therapy for fine motor skills was discontinued in August of 2012. (T. 364.) Therefore, substantial evidence supports the ALJ's conclusion that R.W. had "no limitations" in this domain.

6. **Whether the ALJ Properly Evaluated the Domain of Health and Physical Well-Being.**

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons set forth in Defendant's memorandum of law. (Dkt. No. 14 at 16 [Def.'s Mem. of Law].) The Court adds the following analysis.

This domain considers the cumulative physical effects of physical and mental impairments and associated treatments or therapies on a child's health and functioning that were not considered in the evaluation of the child's ability to move about and manipulate objects. 20 C.F.R. § 416.929a(l).

The ALJ determined R.W. had "no limitations" in this domain, because his pediatrician reported treatment for ADHD, but no other limitations. (T. 31.) Plaintiff

argues R.W. was markedly impaired in this domain and the ALJ failed to consider R.W.'s medication management and need to change his medication to improve functioning. (Dkt. No. 11 at 25 [Pl.'s Mem. of Law].) Defendant counters that physical examinations of R.W. were unremarkable, both State agency medical consultants found no limitations in this domain, and teacher questionnaires did not report any chronic or episodic conditions resulting from R.W. impairments. (Dkt. No. 14 at 16 *referring to* T. 230, 238, 245, 253, 257, 267 [Def.'s Mem. of Law].) In the domain of health and physical well-being, a marked limitation will be found if the child's impairments cause episodes of illness or exacerbations that result in significant, documented symptoms that occur on a regular basis. *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 151 (N.D.N.Y. 2012) (*citing Surita ex rel. Cifuentes v. Astrue,* No. 07-CV-8461, 2008 WL 4998426, at *4 (S.D.N.Y.2008) (20 C.F.R. § 416.926a(e)(2)(iv)). Here, there is no such documentation. R.W.'s pediatricians altered his medication amounts in an attempt to find a balance between medication and symptoms, there is no indication that R.W.'s impairments caused episodes of illness or exacerbations that resulted in significant symptoms. Therefore, since medical documentation indicated no concerns regarding this domain, the ALJ's determination that R.W. had no limitations in the domain of health and physical well-being was supported by substantial evidence.

### C.     Whether the ALJ Properly Evaluated the Opinion Evidence.

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons set forth in Plaintiff's memorandum of law. (Dkt. No. 11 at 16-17 [Pl.'s Mem. of Law].) The Court adds the following analysis.

Plaintiff argues the ALJ "silently rejected" the opinion evidence supplied by Joyce Federman, a special education teacher with Pine Bush Elementary School where R.W. attended second grade. (*Id.* at 16.) Ms. Federman completed a teacher questionnaire in October 2011. (T. 191-198.) To be sure, an ALJ is not required to mention or discuss every single piece of evidence in the record. *See Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983); *Berry,* 675 F.2d at 469; *Miles v. Harris,* 645 F.2d 122, 124 (2d Cir.1981).

However, as this matter is being remanded for a proper evaluation of the various domains in accordance with the evidence in record, it would be prudent for the ALJ take note of Ms. Federman's evaluation on remand.

### D. Whether the ALJ Properly Determined that R.W. Did Not Meet or Equal Any Listed Impairment.

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons set forth in Plaintiff's memorandum of law and response memorandum. (Dkt. No. 11 at 15-16 [Pl.'s Mem. of Law], Dkt. No. 17 at 1-2 [Pl.'s Reply Mem. of Law].) The Court adds the following analysis.

Plaintiff argues the ALJ's step three determination is insufficient, because the ALJ failed to provide an analysis to support his one sentence conclusion that Plaintiff did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (Dkt. No. 11 at 15 *referring to* T. 22 [Pl.'s Mem. of Law].) Plaintiff further contends that R.W. meets Listing § 112.02 Organic Mental Disorders. (*Id.* at 15-16.) In her response brief, Plaintiff argues that R.W. meets Listing § 112.11 Attention Deficit Hyperactivity Disorder. (Dkt. No. 17 at 1-3 [Pl.'s Reply Mem. of Law].)

Defendant counters Plaintiff failed to overcome her burden of proving at step three that R.W. met or equaled a Listing and further that the ALJ's decision provided substantial evidence supporting the ALJ's step three decision. (Dkt. No. 14 at 4 [Def.'s Mem. of Law].) To be sure, it is the plaintiff's burden to establish that she meets or equals a Listing at step three. *Green-Younger v. Barnhart*, 335 F.3d 99, 105 (2d Cir. 2003).

At step three the ALJ concluded, "[R.W. did] not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.924, 416.925 and 416.926)." (T. 22.) That is the complete extent of the ALJ's step three finding. The ALJ did not indicate which Listing or Listings he specifically considered and the ALJ did not provide any additional reasoning or analysis for his conclusion.

The Second Circuit has held that a reviewing court may look to other portions of the ALJ's decision to find support for an ALJ's finding that a plaintiff did not meet or equal a Listing. *Salmini v. Comm'r of Soc. Sec.*, 371 F.App'x. 109, 112-13 (2d Cir. 2010) ("[T]he absence of an express rationale for an ALJ's conclusions does not prevent us from upholding them so long as we are 'able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence.'" (*citing Berry*, 675 F.2d at 469)). Here the Court cannot readily glean from the ALJ's decision that he correctly concluded R.W. did not meet or equal a Listing, because the ALJ did not properly evaluate the evidence in the record for the reasons stated in Part IV.B-C. Therefore, on remand the ALJ should also re-evaluate his step three analysis.

**E. Whether this Court Should Remand to a New ALJ.**

After carefully considering the matter, the Court answers this question in the negative.

Plaintiff urges remand to a new ALJ citing *Kolodnay v. Schweiker*, 680 F.2d. 878 (2d Cir. 1982). First, selection of a new ALJ is in the discretion of the Commissioner. 20 C.F.R. § 404.940. However, courts have ordered the Commissioner to assign a case to a different ALJ on remand. Factors for consideration in determining whether to remand to a new ALJ include: (1) a clear indication that the ALJ will not apply the appropriate legal standard on remand; (2) a clearly manifested bias or inappropriate hostility toward any party; (3) a clearly apparent refusal to consider portions of the testimony or evidence favorable to a party, due to apparent hostility to that party; (4) a refusal to weigh or consider evidence with impartiality, due to apparent hostility to any party. *Sutherland v. Barnhart,* 322 F.Supp.2d 282, (E.D.N.Y.2004); *see also* 20 C.F.R. § 404.940.

Here, there is no clear indication that the ALJ will not apply the appropriate legal standard on remand. In his decision the ALJ properly addressed the appropriate legal standards and specifically referred to the Regulations at each step of the sequential process. (T. 19-31.) Therefore, there is no indication that the ALJ did not apply, or does not intend to apply, the proper standards. There was also no clear hostility to Plaintiff or Plaintiff's counsel during the hearing. Although the ALJ appears to take some of the evidence out of context, there is no indication that the ALJ will neglect to thoroughly review the evidence on remand as directed by this Court. There is also no indication that the ALJ conducted the hearing improperly or refused evidence. As stated in Part

IV.A., the ALJ conducted a proper hearing. Therefore, this matter is remanded, with the ALJ to be chosen at the discretion of the Commissioner.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11, 17) is **<u>GRANTED</u>** in part and **<u>DENIED</u>** in part; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **<u>GRANTED</u>** in part and **<u>DENIED</u>** in part; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated:  September 4, 2015
        Syracuse, NY

Glenn T. Suddaby
U.S. District Judge